IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT KINKUS, | : | |
| Plaintiff, | : | |
| v. | : | Case No. C2-05-930 |
| THE VILLAGE OF YORKVILLE, *et al.*, | : | JUDGE ALGENON L. MARBLEY |
| Defendants. | : | Magistrate Judge King |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant James Popp's ("Officer Popp") Motion for Reconsideration of this Court's Order and Opinion dated September 28, 2006. In that order, this Court granted partial summary judgment in favor of Plaintiff Robert Kinkus ("Kinkus") and against Officer Popp on Count I, after finding that there are no genuine issues of material fact regarding whether Officer Popp is liable under 42 U.S.C. § 1983 for violating Plaintiff's Fourth and First Amendment rights. For the reasons stated herein, Officer Popp's Motion for Reconsideration is **DENIED**.

### II. BACKGROUND

#### A. FACTS

On September 18, 2004, weather conditions caused a flood in Yorkville, Ohio.[1] Because

---

[1] Yorkville is a village in Belmont and Jefferson counties in Ohio. It is part of the Wheeling, West Virginia Metropolitan Statistical Area.

of the rising floodwaters, many of Yorkville's streets were closed to traffic, including Ohio Route 7, the major street running through the Ohio River Valley.

On the day of the flood in Yorkville, Officer James Popp, a police officer with the Yorkville Police Department, was patrolling the low-lying south side area of Yorkville when he encountered Jim Bailey ("Bailey"), a fireman with the Yorkville Fire Department. During a conversation between Officer Popp and Bailey, a woman approached them and requested that they remove some barricades that were blocking Fayette Street so that she could move her vehicle. Popp and Bailey agreed to move the barricades from Fayette Street temporarily for the woman.

After they moved the barricades, Officer Popp and Bailey observed a white jeep (hereinafter, the "Jeep") pull into the area that was formerly blocked off, and they saw the Jeep park in the middle of Fayette Street. Officer Popp and Bailey walked toward it to determine why the driver had parked in that area. When they approached the Jeep, Officer Popp and Bailey identified the driver as Plaintiff, who was, at the time of the incident, a member of the Yorkville Village Council and the assistant fire chief for the Yorkville Fire Department. The Jeep was parked in the middle of the Street in front of Plaintiff's residence. Officer Popp and Plaintiff conversed about why the Jeep was parked in the middle of the Street. Plaintiff did not move the Jeep from the middle of the Street after his conversation with Officer Popp, and Officer Popp and Bailey eventually left the area. Officer Popp did not file any charges against Plaintiff on the day of the incident.

After discussing this incident with Police Chief Gary Anderson ("Chief Anderson") and other officers in the Yorkville Police Department, Officer Popp filed a criminal complaint

against Plaintiff on October 21, 2004 (the "Criminal Complaint"), which accused Plaintiff of committing disorderly conduct on September 18, 2004. Plaintiff was not arrested or jailed as a result of the Criminal Complaint; rather, Plaintiff was presented with a criminal summons. After a short bench trial in state court, Plaintiff was acquitted of disorderly conduct on December 30, 2004.

## B. PROCEDURAL HISTORY

On October 11, 2005, Plaintiff filed a complaint in federal court against the Village of Yorkville, Ohio, Chief Anderson, and Officer Popp (collectively, "Defendants"). Plaintiff's complaint alleges that Defendants are liable to him on three separate legal bases: (1) Defendants' acts "constitute violations of the rights of Mr. Kinkus guaranteed by 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution"; (2) Defendants' acts "constituted an unlawful civil conspiracy to violate [Plaintiff's] rights"; and (3) Defendants' acts "were proximately caused by certain customs and policies engaged in by Defendant Village of Yorkville, including but not limited to a failure to adequately train, supervise, and discipline officers regarding the constitutional rights of citizens; and the ratification and approval of retaliatory prosecutions to silence critics." Pl.'s Compl. at 5. Plaintiff seeks compensatory and punitive damages, reasonable attorney fees, and court costs.

On January 10, 2006, Plaintiff filed a Motion for Partial Summary Judgment on its claims against Officer Popp. Specifically, Plaintiff moved for Summary Judgment against Officer Popp on two of the three 42 U.S.C. § 1983 claims in Count I. The Court granted summary judgment in favor of Plaintiff on these two claims. The Parties Cross-Motions for Summary Judgment on Plaintiff's 42 U.S.C. § 1983 retaliation claim against Officer Popp and Police Chief Anderson,

conspiracy claim against Officer Popp and Police Chief Anderson, and *Monell* claim against the City of Yorkville are still pending before this Court.  In this matter, Officer Popp moves this Court to reconsider its grant of partial summary judgment in favor of Plaintiff.  Plaintiff timely filed an opposition and Officer Popp replied.  As such, Officer Popp's Motion for Reconsideration is ripe for decision.

### III.  STANDARD OF REVIEW

As a general principle, motions for reconsideration are granted if the moving party demonstrates: (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law.  *GenCorp. Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  Motions for reconsideration do not allow the losing party to "repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier."  *National Metal Finishing Co. v. BarclaysAmerican/ Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990) (citation omitted).  This type of motion "should not be used to re-litigate issues previously considered."  *American Marietta Corp. v. Essroc Cement Corp.*, Case No. 01-3752, 2003 U.S. App. LEXIS 3211, at *9 (6th Cir. Feb. 19, 2003).

### IV.  LAW AND ANALYSIS

In its summary judgment opinion, this Court found that Officer Popp violated 42 U.S.C. § 1983 because, while acting under color of law, he deprived Plaintiff of his constitutional rights under both the Fourth and First Amendments.  Specifically, this Court found that Officer Popp arrested Plaintiff solely for exercising his free speech rights protected by the First Amendment.

This Court's decision turned on whether Officer Popp had probable cause to make the arrest.[2] The Court found that Officer Popp did not have probable cause to arrest Plaintiff for disorderly conduct because his "sole basis for filing the disorderly conduct charge against Plaintiff rested upon Plaintiff's speech."

In his Motion for Reconsideration, and in his subsequent Cross-Motions for Summary Judgment, Officer Popp attempts to reinvigorate an argument that he already raised in opposition to Plaintiff's motion for partial summary judgment. Officer Popp alleges that Plaintiff was charged with disorderly conduct not because he directed cuss words at the officer, but rather because he refused Officer Popp's order to move the Jeep from the middle of the road. Officer Popp further alleges that he did not arrest Plaintiff at the scene because he was afraid that Plaintiff, as a city councilman, might have him fired. Approximately a month later, after Chief Anderson allegedly told Officer Popp to treat Plaintiff like any other citizen, Officer Popp charged Plaintiff with disorderly conduct.

Officer Popp now moves this Court to reconsider its summary judgment decision because he contends that an issue of material fact remains regarding whether Officer Popp asked Plaintiff to move the Jeep. Officer Popp asserts that this fact is particularly relevant because if Officer Popp had probable cause to arrest Plaintiff for **any** crime, he would have a valid defense to Plaintiff's Section 1983 claims.

Officer Popp's motion lacks merit for several reasons. First, this motion simply reasserts an argument that Officer Popp already made in opposition to Plaintiff's Motion for Partial

---

[2]Technically, he was not "arrested." Instead, he received a citation in the mail approximately five weeks after the incident

Summary Judgment.  As noted above, a motion for reconsideration is only granted in cases where (1) the Court made a clear error of law; (2) new evidence is discovered that was not previously available to the parties; or (3) an intervening change in controlling law arises.  Rephrasing an argument already put before this Court does not fall within any of these three categories.

Second, this Court already specifically found that no issue of material fact exists regarding whether Officer Popp ordered Plaintiff to move his Jeep.  In its opinion and order, this Court explicitly stated that "as a threshold matter, Officer Popp does not offer any evidence to indicate that he ever issued a specific verbal order to Plaintiff on the night in question."

Officer Popp points to footnote three of this Court's order and opinion in support of his argument that this Court erred in concluding that no issue of material fact exists regarding whether Officer Popp explicitly ordered Plaintiff to move his Jeep.  Footnote three reads:

> The actual content of the conversation between Officer Popp and Plaintiff is in dispute.  Popp alleges that Plaintiff loudly and rudely refused to move the Jeep, using curse words, despite the fact that there was an ongoing emergency situation.  Plaintiff, on the other hand, states that, while he may have been angry at the time, he never refused to comply with Officer Popp's verbal orders because Popp never ordered him to move the Jeep.  During his deposition in this case, Plaintiff testified that he never cursed during his conversation with Popp on September 18, 2004.

Nowhere in this footnote, however, does the Court mention that either Plaintiff or Officer Popp allege that Officer Popp told Plaintiff to move his Jeep.  Moreover, even in his Motion for Reconsideration, Officer Popp cannot point to one instance – be it a transcript of his criminal trial testimony or his deposition in this case – where he has stated that he told Plaintiff to move his Jeep.  Instead, in an obvious attempt to mislead this Court, Officer Popp quotes a portion of

Planitiff's deposition testimony where Plaintiff said, "I got to get that jeep off the street."[3]  This quote was plucked from a section of the deposition testimony in which Plaintiff, numerous times, said that Officer Popp "never told me to move the Jeep."  For these reasons, as the Court stated in its opinion, "this Court cannot find that Popp had probable cause to file the Criminal Complaint based upon Plaintiff's failure to comply with an order that never was issued."

Third, even assuming *arguendo* that there this an issue of material fact regarding whether Officer Popp explicitly told Plainitiff to move his Jeep, Officer Popp's argument still fails.  The Court has already stated that there was no probable cause to arrest Plaintiff for disorderly conduct.  If, however, Officer Popp had probable cause to arrest Plaintiff on a "closely related" charge, he has a valid defense to Plaintiff's Section 1983 claim.  *See Kelly v. Myler*, 149 F.3d 641, 647–48 (7th Cir. 1998); *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997); *Bennett v. Schroeder*, 2004 WL 1193963, at *8 (6th Cir. May 27, 2004).  Thus, Officer Popp contends, if he had probable cause to arrest Plaintiff for failing to obey a lawful command of a police officer,[4] then he has a defense to Plaintiff's Section 1983 claim.

As the Court fully explained in its opinion and order, by simply examining the language of the respective statutes, one can discern that the disorderly conduct charge levied against

---

[3]It is manifest from the surrounding questions in Plaintiff's deposition, and from a subsequent correction statement submitted by Plaintiff, that he was talking about what topic he would bring up at the city council meeting and not the explicit words of Officer Popp.

[4]Section 2921.331(A), prohibiting the failure to comply with an order or signal of a police officer, provides that "[n]o person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic."  OHIO REV. CODE § 2921.331(A).

Plaintiff[5] and the potential charge of failing to obey a lawful command are in no way "closely related." Therefore, even if this Court were to find that a material issue of fact exists regarding whether Plaintiff disobeyed a lawful order, it would not be a defense to Plaintiff's Section 1983 claim because this charge is not "closely related" to the disorderly conduct charge. Officer Popp filed the Criminal Complaint on October 21, 2004, more than a month after the date that the alleged criminal acts occurred. Officer Popp had more than enough time to investigate this case and to file the appropriate charges against Plaintiff. If Officer Popp thought that Plaintiff had committed some crime other than the disorderly conduct charge at issue, then he should have filed those charges. This Court will not now allow Officer Popp effectively to revise or to amend the specific criminal charges he filed against Plaintiff when Popp had ample opportunity to do so two years ago, but chose not to.

Officer Popp also relies on the Sixth Circuit's unpublished decision in *Thacker v. Lawrence County*, 2006 WL 1359971 (6th Cir. May 17, 2006), in support of his proposition that he could have believed that Plaintiff was acting disorderly based on the volume and aggressive delivery of his speech, coupled with his failure to obey Officer Popp's unsubstantiated order to move the Jeep. In *Thacker*, a Sixth Circuit panel held that an officer had probable cause to arrest a person for disorderly conduct under Ohio Revised Code § 2917.11(A)(1) during an emergency situation when the person: (1) had raised his voice, (2) had sworn at the officers, (3) had continued to swear at them after he was asked to calm down, and (4) was visibly upset. *Id.* at *5.

---

[5]OHIO REV. CODE § 2917.11(A)(2), one of several statutes prohibiting disorderly conduct, provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by making unreasonable noise or an offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person[.]" OHIO REV. CODE § 2917.11(A)(2).

*Thacker* is inapplicable for two reasons. First, this Court already addressed this argument in its opinion when it found that Officer Popp's citation of Plaintiff was based solely on the content of Plaintiff's speech and not on his aggressive behavior at the time of the incident. Second, the plaintiff in *Thacker* was charged under Ohio Revised Code § 2917.11(A)(1),[6] whereas Officer Popp charged Plaintiff under Ohio Revised Code § 2917.11(A)(2), the difference being that the former statute refers specifically to "turbulent behavior" whereas the later is directed at speech. Thus, because the *Thacker* decision pertains to a different statute regulating different conduct, it is not controlling in this case.

## V. CONCLUSION

For the reasons stated herein, Officer Pop's Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

       s/Algenon L. Marbley
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**

**DATED: February 14, 2007**

---

[6] Section 2917.11(A)(1), prohibiting disorderly conduct, provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." OHIO REV. CODE § 2917.11(A)(1).