**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT KINKUS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. C2-05-930** |
| | : | |
| **THE VILLAGE OF YORKVILLE,** *et al.*, | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge King** |
| **Defendants.** | : | |
| | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on two Motions for Summary Judgment filed by Plaintiff

Robert Kinkus ("Kinkus") and five Motions for Summary Judgment filed by Defendants.

Additionally, Defendants have filed three Motions to Strike.

In Defendant Officer James Popp's ("Officer Popp") first Motion for Summary

Judgment, he asserts that he is entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1983

claim that Officer Popp violated Plaintiff's First and Fourth Amendment rights.[1]  In Plaintiff's

first Motion for Summary Judgment, he states that there are no genuine issues of material fact

regarding whether Officer Popp or Police Chief Gary Anderson ("Chief Anderson") violated 42

U.S.C. § 1983 by retaliating against him for exercising his right to free speech under the First

Amendment.  In this Motion, Plaintiff also moves for summary judgment against Officer Popp

---

[1]This Court already granted summary judgment on these two claims in favor of Plaintiff.
If, however, Officer Popp is entitled to qualified immunity, this Court's previous decision would
be vacated.

and Chief Anderson on Count II, a claim based upon an alleged "unlawful civil conspiracy" in violation of 42 U.S.C. § 1983.  Officer Popp and Chief Anderson oppose this Motion, and in two separate Motions of their own, cross-move for summary judgment.  In his second Motion for Summary Judgment, Plaintiff moves for Summary Judgment against the City of Yorkville, Ohio ("Yorkville") on Count III, a *Monell* claim.  Yorkville also filed a Cross-Motion for Summary Judgment on the *Monell* claim.  Finally, Defendants have filed three Motions to Strike various notices and responses of Plaintiff.  For the reasons stated herein, the Court**:**

1) **DENIES** Officer Popp's Summary Judgment Motion based on Qualified Immunity (Doc. 68);

2) **DENIES** Plaintiff's Motion for Summary Judgment based on Retaliation against Officer Popp (Doc. 71);

3) **GRANTS** Plaintiff's Motion for Summary Judgment based on Retaliation Against Chief Anderson (Doc. 71);

4) **DENIES** Chief Anderson's Motion for Summary Judgment on Plaintiff's Retaliation Claim (Doc. 76);

5) **DENY** Plaintiff's Motion for Summary Judgment on his Conspiracy Claim against Officer Popp (Doc 71);

6) **DENIES** Plaintiff's Motion for Summary Judgment on his Conspiracy Claim against Chief Anderson (Doc. 71);

7) **DENIES** Officer Popp's Motion for Summary Judgment on Plaintiff's Conspiracy Claim (Doc. 73);

8) **DENIES** Chief Anderson's Motion for Summary Judgment on Plaintiff's Conspiracy Claim (Doc. 76);

9.) **MOOTS** Defendants' Motion to Strike Plaintiff's Notice (Doc. 83);

10.) **MOOTS** Officer Popp's Motion to Strike Plaintiff's Notice (Doc. 94);

11.) **DENIES** Chief Anderson's Motion to Strike Plaintiff's Opposition to Chief Anderson's Motion for Summary Judgment (Doc. 96);

12.) **GRANTS** Plaintiff's Summary Judgment Motion on his *Monell* claim against Yorkville (Doc. 72);

13.) **DENIES** Yorkville's Motion for Summary Judgment on Plaintiff's *Monell* claim (Doc. 77); and

14.) **DENIES** Officer Popp's Motion for Summary Judgment on Plaintiff's Retaliation Claim (Attachment to Doc. 111)

## II.  BACKGROUND

### A.  FACTS

On September 18, 2004, weather conditions caused a flood in Yorkville, Ohio.[2]  Because of the rising floodwaters, many of Yorkville's streets were closed to traffic, including Ohio Route 7, the major street running through the Ohio River Valley.

On the day of the flood in Yorkville, Officer James Popp, a police officer with the Yorkville Police Department, was patrolling the low-lying south side area of Yorkville when he encountered Jim Bailey ("Bailey"), a fireman with the Yorkville Fire Department.  During a conversation between Officer Popp and Bailey, a woman approached them and requested that they remove some barricades that were blocking Fayette Street so that she could move her

---

[2]Yorkville is a village in Belmont and Jefferson counties in Ohio.  It is part of the Wheeling, West Virginia Metropolitan Statistical Area.

vehicle.  Officer Popp and Bailey agreed to move the barricades from Fayette Street temporarily for the woman.

After they moved the barricades from Fayette Street, Officer Popp and Bailey observed a white jeep (hereinafter, the "Jeep") pull into the area that was formerly blocked off, and they saw the Jeep park in the middle of Fayette Street.  Officer Popp and Bailey walked toward it to determine why the driver had parked in that area.  When they approached the Jeep, Officer Popp and Bailey identified the driver as Plaintiff, who was, at the time of the incident, a member of the Yorkville Village Council and the assistant fire chief for the Yorkville Fire Department.  The Jeep was parked in the middle of the street in front of Plaintiff's residence.  Officer Popp and Plaintiff conversed about why the Jeep was parked in the middle of the Street.  Plaintiff did not move the Jeep from the middle of the street after his conversation with Officer Popp, and Officer Popp and Bailey eventually left the area.  Officer Popp did not file any charges against Plaintiff on the day of the incident.

After discussing this incident with Police Chief Anderson and other officers in the Yorkville Police Department, Officer Popp filed a criminal complaint against Plaintiff on October 21, 2004 (the "Criminal Complaint"), which accused Plaintiff of committing disorderly conduct on September 18, 2004.  Plaintiff was not arrested or jailed as a result of the Criminal Complaint; rather, Plaintiff was presented with a criminal summons.  After a short bench trial in state court, Plaintiff was acquitted of the disorderly conduct charge on December 30, 2004.

### B.  PROCEDURAL HISTORY

On October 11, 2005, Plaintiff filed a complaint in federal court against the Village of Yorkville, Ohio, Yorkville Police Chief Gary Anderson, and Officer Popp (collectively,

"Defendants").  Plaintiff's complaint alleges that Defendants are liable to him on three separate

legal bases: (1) Defendants' acts "constitute violations of the rights of Mr. Kinkus guaranteed by

42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States

Constitution"; (2) Defendants' acts "constituted an unlawful civil conspiracy to violate

[Plaintiff's] rights"; and (3) Defendants' acts "were proximately caused by certain customs and

policies engaged in by Defendant Village of Yorkville, including but not limited to a failure

adequately to train, supervise, and discipline officers regarding the constitutional rights of

citizens; and the ratification and approval of retaliatory prosecutions to silence critics."  Pl.'s

Compl. at 5.  Plaintiff seeks compensatory and punitive damages, attorney fees, and court costs.

On January 10, 2006, Plaintiff filed a Motion for Partial Summary Judgment on his

claims against Officer Popp.  Specifically, Plaintiff moved for Summary Judgment against

Officer Pop on two of the three 42 U.S.C. § 1983 claims in Count I.  On September 28, 2006, the

Court granted summary judgment in favor of Plaintiff on these two claims.

On December 4, 2006, Officer Popp filed a motion for reconsideration of this Court's

September 28, 2006 order.  On February 9, 2007, this Court denied Officer Popp's motion for

reconsideration.

The Parties have filed various Motions for Summary Judgment and Motions to Strike.

They have also timely filed responses and replies.  As such, these Motions are ripe for decision.

### III.  STANDARD OF REVIEW

The standard of review for cross-motions of summary judgment does not differ from the

standard applied when a motion is filed by only one party to the litigation.  *Taft Broad. Co. v.

U.S.*, 929 F.2d 240, 248 (6th Cir. 1991).  "The fact that both parties have moved for summary

judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits. . .". *Id.* (citations omitted).

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party). In evaluating motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In the case of cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Taft, 929 F.2d at 248. The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). Significantly, in responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

## IV.  LAW and ANALYSIS

### A.  Officer Popp's Motion for Summary Judgment Based on Qualified Immunity

Officer Popp moves for summary judgment on Count I of Plaintiff's complaint, which, among other things, alleges that Officer Popp violated 42 U.S.C. § 1983 by abridging Plaintiff's First and Fourth Amendment rights. Officer Popp makes various arguments in support of this Motion, not the least of which is that he had probable cause to arrest Plaintiff for disorderly conduct or for failure to obey the directive of a police officer. With the exception of Officer Popp's assertion that he is entitled to qualified immunity for all of Plaintiff's Section 1983 claims, this Court addressed all of Officer Popp's arguments in its Order and Opinion granting Plaintiff partial summary judgment on his claim that Officer Popp violated 42 U.S.C. § 1983 by abridging Plaintiff's First and Fourth Amendment rights. As such, all of Officer Popp's arguments not relating to qualified immunity are **MOOT**.

Qualified immunity, or "good faith" immunity, is an affirmative defense that the defendant officer must raise. *Siegert v. Gilley*, 500 U.S. 226 (1991). Qualified immunity is

generally a question of law to be decided by the Court. *Hunter v. Bryant*, 502 U.S. 224 (1991).

The Supreme Court set an objective standard for determining when qualified immunity applies:

"Government officials performing discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982); *see also Burchett v. Keifer*, 310 F.3d 937, 942 (6th Cir. 2002).  Courts

should engage in a two step analysis when determining if an officer is entitled to qualified

immunity. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Dunigan v. Noble*, 390 F.3d 486, 491

(6th Cir. 2004).  First, the court must consider whether the officer violated a constitutional right.

*Id.*  Second, the court should determine if the right is one that is clearly established and that a

reasonable officer should know.  *Id.*  The Court should examine whether the plaintiff has offered

sufficient evidence to indicate that the official's action was objectively unreasonable in light of

plaintiff's clearly established constitutional rights. *Feathers v. Aey,* 319 F.3d 843, 847 (6th Cir.

2003) (quotations and citations omitted).  In doing so, the Court should look to the

preponderance of the evidence and not clear and convincing evidence.  *Crawford-El v. Britton*,

523 U.S. 574 (1998).

      As the Court discussed at length in its previous Opinion and Order, Officer Popp violated

Plaintiff's rights under the First and Fourth Amendment when he arrested him without probable

cause solely for exercising his right to free speech.  Thus, the first step in the qualified immunity

analysis is satisfied.

      Next, the Court must determine whether Plaintiff's rights under the First and Four

Amendments are "clearly established" in this case for purposes of qualified immunity.  In this

context, "clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

This inquiry must be taken in light of the specific context of the case and not as a broad general proposition.  *Dunigan*, 390 F.3d at 491.  It could plausibly be asserted that, because the First and Fourth Amendments enacted in the Bill of Rights and have been the subject of hundreds if not thousands of court decisions, these rights are "clearly established."  *See generally Wilson*, 526 U.S. at 615.  However, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  *Id.* This means that the Court must not analyze whether the rights prescribed by the First and Four Amendments are clear, but rather, whether a reasonable officer could have believed that citing Plaintiff for disorderly conduct over a month after the incident in question was lawful, in light of clearly established law and the information the officer possessed.  *See generally id.; Anderson v. Creighton*, 483 U.S. 635 (1987).

Rather than directing his argument to the second step of the qualified immunity analysis, the "clearly established" prong, Officer Popp focuses all of his arguments on the first prong.  None of these arguments is novel.  Officer Popp simply reasserts that he had probable cause when he cited Plaintiff for disorderly conduct.  This Court has already ruled that he did not.

In this case, Officer Popp should have known that his conduct violated the law.  As this Court has previously held, it cannot be debated that Officer Popp cited Plaintiff solely based on

Plaintiff's speech.  The First Amendment clearly protects the profane language that Plaintiff directed at Officer Popp.  The backbone of the qualified immunity doctrine "is a recognition that police officers, acting reasonably, may err; the concept of immunity thus acknowledges that it is better to risk some error and possible injury from such error than not to decide or act at all."  *Dunigan*, 390 F.3d at 491 (citations committed).  Here, Officer Popp did not make a snap decision.  Had he heard Plaintiff's words and saw Plaintiff's actions and then immediately arrested Plaintiff, he would have a much stronger qualified immunity claim.  In this case, however, Officer Popp had approximately five weeks in which to mull over the situation, discuss it with his superiors, and examine Plaintiff's history of opposing certain actions of the Yorkville Police Department, before he decided if charges were appropriate.  Even after all this time, Officer Popp acted in violation of the Fourth and First Amendments by citing Plaintiff solely based on protected speech.[3]  This is not the type of "reasonable mistake" that qualified immunity is designed to protect.  Thus, Officer Popp's Motion for Summary Judgment based on Plaintiff's Section 1983 claims as they relate to Officer Popp's violation of Plaintiff's First and Fourth Amendment rights is **DENIED**.

## B.  Plaintiff's, Officer Popp's, and Chief Anderson's Cross-Motion for Summary Judgment for "Retaliatory Prosecution" under 42 U.S.C. § 1983[4]

---

[3]This is strongly evidenced by the fact that Officer Popp cited Plaintiff for violating OHIO REV. CODE § 2917.11(A)(2) rather than one of many other statutes prohibiting disorderly conduct.  This statute focuses more specifically on violent speech than most of the other statutes.  For example, OHIO REV. CODE § 2917.11(A)(1) focuses on, among other actions, "turbulent behavior."

[4]In one motion (Doc. 71), Plaintiff moves for summary judgment against both Officer Popp and Chief Anderson for both "retaliatory prosecution" and "conspiracy" under 42 U.S.C. § 1983.  Officer Popp and Chief Anderson filed a joint opposition (Doc 85).  Then, Officer Popp

Plaintiff has a cognizable action for retaliatory prosecution under 42 U.S.C. § 1983 if he can show that: 1) his speech activities were protected by the First Amendment; 2) a state officer arrested him; 3) without probable cause; 4) and the arrest was motivated by, at least in part, the protected speech activities. *See Harless v. City of Columbus,* 183 F.Supp.2d 1024, 1031 (S.D. Ohio 2002) (Marbley, J.); *Hartman v. Moore* 126 S.Ct. 1695, 1698 (2006); *Pickney Bros, Inc. v. Robinson*, 1999 WL 801515 *8 (6th Cir. Sept. 30, 1999) (Cole, J.) ("There are three elements to a retaliation claim: 1) the plaintiff engaged in protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected conduct.")[5] Moreover, in a retaliation claim, liability cannot attach to a person who acts only in a supervisory capacity if "the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

Plaintiff has demonstrated that he engaged in speech activities protected by the First Amendment. Specifically, he had, at times prior to his arrest, been an outspoken critic of the

---

filed a motion for summary judgment only on the conspiracy claim (Doc 73). Chief Anderson filed a motion for summary judgment on both the retaliatory prosecution and the conspiracy claim (Doc 76). Officer Popp did not initially file a cross-motion for summary judgment on Plaintiff's retaliation claim. On March 5, 2007, however, Officer Popp asks this Court to allow him to join in Chief Anderson's Cross-Motion. Plaintiff does not oppose this motion. This Court hereby **GRANTS** this request.

[5]Plaintiff, and to a certain extent the *Harless* court refer to "retaliation" and "vindictive enforcement" interchangeably. In *Pickney*, the court made clear that these are actually two separate claims. Since Plaintiff states the correct test for retaliation and proffers evidence related only to that claim, this Court will treat this only as retaliation claim. (The elements of vindictive enforcement are: 1) exercise of a protected right; 2) the prosecutor had a "stake" in the exercise of that right; 3) the prosecutor's conduct was unreasonable; and 4) the prosecution was initiated with the intent to punish the plaintiff.)

Yorkville Police Department and Chief Anderson.  Several members of the Yorkville Village

Council testified that Plaintiff made public comments criticizing the police at council meetings.

Some of these comments related to two incidents where Yorkville police officers arrested, and

allegedly assaulted, three young men, one of which was Plaintiff's grandson.  These incidents

resulted in lawsuits against the Yorkville police that terminated in out-of-court settlements.

Additionally, Police Chief Anderson testified, at length, that he knew of Plaintiff's comments

and that they upset him.  There is no argument that the First Amendment protects this speech.

Thus, Plaintiff has satisfied his burden of showing that he engaged in protected speech.[6]

Likewise, Plaintiff has satisfied prongs two and three of the *Harless* test.  Officer Popp

and Chief Anderson took adverse action against him by citing him for disorderly conduct.

Moreover, as discussed at length in this Court's previous opinion, there was no probable cause

for this arrest.  Thus, the only question left to address is whether Officer Popp and Chief

Anderson were motivated, at least in part, by Plaintiff's derogatory comments about the police

when they decided to cite him for disorderly conduct.

Plaintiff proffers substantial circumstantial evidence that Chief Anderson had Plaintiff

cited for disorderly conduct because of his critical comments regarding the Yorkville Police

Department.  Officer Popp did not cite Plaintiff for disorderly conduct at the scene even though

---

[6]In Plaintiff's reply brief, which is the only briefing in this case submitted after this court's previous summary judgment opinion, Plaintiff states that the Court's decision that Officer Popp's arrest of Plaintiff was without probable cause somehow dispositively proves the retaliation claim against Officer Popp.  This is not true.  First, while the Court's decision stated that the arrest was without probable cause, it did not speak at all to Officer Popp's intent.  Second, the Court's opinion revolved around Plaintiff's speech at the time of the incident, not his critical comments about the police months before the incident.  Plaintiff cannot argue for the first time in his reply brief that the protected speech activity in question was the swear words during the incident when his entire brief focused on his speech before the incident.

he had his citation book with him.  Instead, over a month later, Officer Popp filed a misdemeanor complaint, something he had never done before.  Moreover, Officer Popp did not approach Chief Anderson about Plaintiff's behavior.  Rather, Chief Anderson, after hearing about the incident from other officers in the department, approached Officer Popp to ask him why he did not cite or arrest Plaintiff at the scene.  After this discussion, Chief Anderson had Officer Popp sign a *blank* complaint.  Officer Popp testified that he simply signed the blank complaint form and someone else typed in the charges and accusations on the form.  Chief Anderson then took the complaint form to the prosecutor's office.  Finally, as Plaintiff notes as evidence that Chief Anderson had a special interest in Plaintiff's prosecution, Chief Anderson attended Plaintiff's entire misdemeanor trial, something he has never done before.

Defendants proffer a different theory based on these same facts.  Chief Anderson states that he approached Officer Popp to inquire about the incident between Officer Popp and Plaintiff.  Officer Popp explained that he wanted to charge Plaintiff at the scene but feared that Plaintiff, a city council member, might have him fired if he did.  Chief Anderson alleges that he told Officer Popp that Plaintiff should be treated like any other citizen.  Chief Anderson contends that he left the decision about whether to charge Plaintiff in the hands of Officer Popp.  Once Officer Popp decided to charge Plaintiff, Chief Anderson brought Officer Popp the appropriate forms to fill out.  He had Officer Popp sign them, and then they were filed with the prosecutor's office.

Before analyzing the Parties' differing theories, the Court will examine a portion of Chief Anderson's deposition testimony that Plaintiff asserts dispositively proves that Chief Anderson had retaliatory intent when he assisted in the prosecution of Plaintiff.

-13-

**Q1: Is it accurate to say that Mr. Kinkus' charges were brought only in part in response to his statements toward the officer that were critical or obscene?**

MR. MASTROS: Objection.  Go ahead and answer.

A1: Could you repeat the question?

**Q2: Yes.  Were Mr. Kinkus' charges brought against him only in part because of the statements that he had made that were insulting or critical of police?**

MR. MASTROS: Same objection.

A2: Yes.

**Q3: In addition to that you felt that it was criminal conduct?  it was disorderly conduct; is that right?**

A3: Yes, sir.

(Anderson Deposition at 23-24)

Plaintiff contends that, in this exchange, Chief Anderson admits that part of his reason for bringing charges against Plaintiff was that he had made "insulting or critical" comments about the police.  Defendants contend that Chief Anderson's answer to the second question, "yes," was really a response to the first question – were charges brought only in part because of Plaintiff's statements at the scene.

Defendants also assert that they should receive qualified immunity for the actions they took in prosecuting Plaintiff for disorderly conduct.  As set forth above — Plaintiff's arrest lacked probable cause and was a result of Plaintiff exercising his right to free speech — Defendants are not entitled to qualified immunity.  Moreover, either Defendants illegally retaliated against Plaintiff or they did not; there is no middle ground.  Defendant's actions are not separately justifiable if this Court, or a jury, concludes that they acted with retaliatory intent.

-14-

Plaintiff asserts retaliation claims against both Officer Popp and Chief Anderson. Thus, the Court will analyze the retaliation claim against each defendant separately. There exists little evidence of a retaliatory motive on the part of Officer Popp. He only joined the Yorkville Police Department a few months before the incident. Moreover, there is no evidence on the record that Officer Popp knew of, or took offense to, any of the derogatory comments that Plaintiff made about the police. Last, Officer Popp did not actively pursue charges against Plaintiff. It was not until after Chief Anderson approached him and discussed the situation, that he filed charges against Plaintiff. Thus, this Court **DENIES** Plaintiff's Motion for Summary Judgment against Officer Popp on Plaintiff's retaliatory prosecution claim under 42 U.S.C. § 1983.

Conversely, given that Officer Popp took over a month to charge Plaintiff with disorderly conduct, during which he had extensive discussions with Chief Anderson, it is possible that Chief Anderson could have relayed to Officer Popp the various disparaging comments that Plaintiff made regarding the Yorkville police. As such, a genuine issues of material fact exists concerning whether Officer Popp knew of Plaintiff's comments and whether this knowledge led to him possess the requisite retaliatory intent when he arrested Plaintiff. Therefore, this Court **DENIES** Officer Popp's Motion for Summary Judgment on Plaintiff's retaliation claim.

On the other hand, Plaintiff's circumstantial case against Chief Anderson is strong. The evidence shows that upon hearing about Officer Popp's encounter with Plaintiff, Chief Anderson took an unusual interest in the disposition of Plaintiff's prosecution. He asked why Plaintiff was not prosecuted, he explained to Officer Popp how to file the forms, he brought Popp a blank complaint and had him sign it, he took the forms to the prosecutor's office, and he viewed Plaintiff's entire trial. It strains the Court's credulity that the Chief of Police would invest this

-15-

amount of time investigating a misdemeanor if he did not have a personal stake in the outcome

of this case. Moreover, Chief Anderson admitted under oath that he had Plaintiff charged with

disorderly conduct, at least in part, based on his disparaging comments about the Yorkville

police. Chief Anderson had ample opportunity to correct this inculpatory statement if he thought

he made it in error. He did not do so. He cannot now revoke it in an attempt to escape its

consequences. Chief Anderson's deep personal involvement in this case, his knowledge of

Plaintiff's anti-police comments, and his admission that he arrested Plaintiff in part based on

those comments removes any genuine issue of material fact regarding Chief Anderson's

retaliatory intent. As a result, this Court **GRANTS** Plaintiff's Motion for Summary Judgment

against Chief Anderson on Plaintiff's retaliatory prosecution claim under 42 U.S.C. § 1983 and

**DENIES** Chief Anderson's Motion for Summary Judgment on Plaintiff's retaliatory prosecution

claim under 42 U.S.C. § 1983.

### C. The Parties' Cross-Motions for Summary Judgment on Plaintiff's Civil Conspiracy Claim Under 42 U.S.C. § 1983

A civil conspiracy is a cognizable action under 42 U.S.C. § 1983. *Hooks v. Hooks*, 771

F.2d 935, 944 (6th Cir. 1985); *Colley v. Darling*, 98 F.3d 211 (6th Cir. 1996). A "civil

conspiracy" is an agreement between two or more persons to injure another by unlawful action.

An express agreement among the conspirators is not necessary to find the existence of a civil

conspiracy, nor must each conspirator know all the details of each plan. *Id.* All that must be

shown to sustain an action for civil conspiracy is that: 1) there was a single conspiratorial plan;

2) the conspirators shared a common objective; and 3) an overt act was committed in furtherance

of the conspiracy's objective that caused injury to the plaintiff. *Id.*

Plaintiff asserts that Officer Popp and Chief Anderson conspired to injure him.  Plaintiff

does not have a separate argument section in his brief for this conspiracy claim.  Rather, he

contends that the facts he put forth in support of his retaliation claim are also sufficient to sustain

a civil conspiracy claim.

Officer Popp and Chief Anderson, in separate motions, move for summary judgment

because they allege that they are exempt from liability under the "intracorporate conspiracy

doctrine."  The intracorporate conspiracy doctrine states that "members of the same legal entity

cannot conspire with one another as long as their alleged acts are within the scope of their

employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999).  This doctrine

arose in the context of antitrust suits.  The core of this doctrine is that a corporate officer and the

entity itself should not inherently be thought of as two separate persons for the purpose of a

conspiracy.  *Id.* (citing *Harris v. Board of Educ.*, 798 F.Supp. 1331, 1346 (S.D. Ohio 1992)

("[S]imply joining corporate officers as defendants in their individual capacities is not enough to

make them persons separate from the corporation in legal contemplation.  The plaintiff must also

allege. . . that they acted other than in the normal course of their corporate duties")); *Hull v.

Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)

("[I]f all of the defendants are members of the same collective entity, there are not two separate

'people' to form a conspiracy").

Courts have extended the intracorporate conspiracy doctrine beyond antitrust litigation to

"cases alleging civil rights conspiracies." *Johnson v. Hill & Dales General Hosp.*, 40 F.3d 837,

840 (6th Cir. 1994).  Defendants cite two such cases.  In *Jackson*, 194 F.3d 737 and *Hull*, 926

F.2d 505, the Sixth Circuit held that city officials could not be found liable for civil rights

conspiracy under 42 U.S.C. § 1985.[7]  The court reasoned that the defendants could not legally

conspire with one another because they were all part of the same entity, and thus the "two or

more persons requirement" of a conspiracy claim was not met.  *Hull*, 926 F.2d at 510 ("In the

present case, plaintiff is alleging a conspiracy between a school district superintendent, the

executive director of the district, and a school administrator, all of whom are employees or

agents of the Board.  Since all of the defendants are members of the same collective entity, there

are not two separate "people" to form a conspiracy").

The intracorporate conspiracy doctrine, however, is not applicable in this case.  This

doctrine has only be applied in antitrust cases and civil rights conspiracy cases.  Neither is

present before this Court.  Plaintiff is asserting a civil conspiracy claim under 42 U.S.C. § 1983,

not a civil rights conspiracy claim under 42 U.S.C. § 1985.  Defendants do not cite any precedent

that supports Defendants' position that the intracorporate conspiracy doctrine can be applied to a

civil conspiracy claim under § 1983.  Moreover, Defendants do not, in any way, attempt to

---

[7] 42 U.S.C. § 1985(3) states: "Depriving persons of rights or privileges:  If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

analyze either the case law pertaining to the intracorporate conspiracy doctrine under 42

U.S.C. § 1985 or the policy behind the intracorporate conspiracy doctrine to the facts of this

case.

While no Court has ever specifically held that the intracorporate conspiracy doctrine

cannot apply to civil conspiracy under 42 U.S.C. § 1983, several courts have addressed summary

judgment motions/motions to dismiss and applied the intracorporate conspiracy doctrine to 42

U.S.C. § 1985 but completely ignored it with respect to 42 U.S.C. § 1983. *See, e.g., Elersic v.*

*Lake County*, 2005 WL 1353864 at *4 (N.D. Ohio June 7, 2005) ("However, because Mr. Elersic

does not refer to Section 1985 anywhere in his complaint . . ." the court declines to apply the

intracorporate conspiracy doctrine); *Jackson v. Tennessee Dept. of Safety*, 2006 WL 208578 at

*2 (E.D. Tenn. January 26, 2006).  Moreover, the Fifth Circuit, in *Dussouy v. Guld Coast Inv.*

*Corp.*, 660 F.2d 594, 603 (5th Cir. 1981), specifically cautioned against the liberal expansion of

this doctrine.

On the other hand, in *Turner v. Viviano*, 2005 WL 1678895 at *13 (E.D. Mich. July 15,

2005), the court held because "the City of Hazel Park, a municipal corporation, cannot conspire

with other parts of the corporate body, such as agents like the police officers it employees," the

intracorporate conspiracy doctrine barred the Plaintiff's 42 U.S.C. § 1985 claim.  Then, without

discussion, the court commented that "likewise, Plaintiff's claim against the city of a conspiracy

under 42 U.S.C. § 1983 fails pursuant to the intracorporate conspiracy doctrine." *Id.; see also*

*Maxey v. Smith*, 1996 WL 33370658 at *5 (N.D. Miss. February 13, 1996) ("One question that

initially arises is whether the [intracorporate conspiracy] doctrine should also be extended for

use in cases of alleged conspiracy under 42 U.S.C. § 1983. . . If the doctrine is to be extended to

-19-

§ 1985(3), it is only logical that it also encompass claims under § 1983.  Section 1983 is of the same Congressional vintage as section 1985.  Furthermore, a section 1983 conspiracy claim would also have the same disruptive effect on business decisions as a section 1985 conspiracy action.")

This Court does not agree with Defendants' argument that if the courts have extended the intracorporate conspiracy doctrine to Section 1985(3) cases, then it should be extended to Section 1983 conspiracy cases alleging violations on constitutional rights.  Section 1985 is in its essence a conspiracy statute; Section 1983 is not.  Congress wrote Section 1985 to allow civil redress against those who conspired to deprive persons of their civil rights; hence, any doctrine otherwise applicable to conspiracies, such as the intracorporate conspiracy doctrine, would apply to Section 1985.  The same cannot be said for Section 1983.

This case, moreover, does not contain the requisite facts for the application of this doctrine.  It is not factually analogous to *Turner* or *Maxey*.  The court in *Maxey* declined to extend the intracorporate conspiracy doctrine to the defendants in that case because it found that there were genuine issues of material fact as to whether the doctrine should apply.  *Id.*  And, unlike in *Turner*, Plaintiff is not bringing a civil conspiracy claim against Yorkville, but rather only against the individual officers.

Further, since the heart of the intracorporate conspiracy doctrine is that a "corporation cannot conspire with its own agents or employees," *Franklin v. Frid*, 7 F.Supp.2d 920, 926 (W.D. Mich. 1998) the fact that Plaintiff does not claim that Officer Popp or Chief Anderson conspired with Yorkville to injure him bars the application of the doctrine.  He only claims that the officers conspired with each other.  As such, extending the policy behind the intracorporate

-20-

conspiracy doctrine from the realm of 42 U.S.C. § 1985 to 42 U.S.C. § 1983 is not appropriate in this case. *See, e.g., Maxey*, 1996 WL 33370658 at *6, ("When officers of a corporation act for their own personal purposes, they become independent actors, who can conspire . . .") (citations omitted).

Finally, several courts have held that if the individual actors held a personal stake in their actions that is separate from that of the corporation, they cannot be shielded by the intracorporate conspiracy doctrine. *See, e.g., Buschi v. Kervin*, 775 F.2d 1240, 1252 (4th Cir. 1985). If Officer Popp and Chief Anderson's conspired to retaliate against Plaintiff because of his anti-police comments, they could have been doing it for personal reasons aside form those of the city. Additionally, these retaliatory actions could plausibly be seen as falling outside their designated scope of employment. Thus, even if this Court were inclined to extend the intracorporate conspiracy doctrine to conspiracies alleged under Section 1983, which it is not, it would be for a jury to decide whether the officers acted within their scope of employment in citing Plaintiff for disorderly conduct. Because Officer Popp and Chief Anderson's entire argument, aside from those already addressed in this Court's previous summary judgment opinion, is that the intracorporate conspiracy doctrine bars Plaintiff's civil conspiracy claim under 42 U.S.C. § 1983, their respective motions are **DENIED**.

Plaintiff, as noted above, does not give any reason why the facts he alleges to support his retaliation claim also support his conspiracy claim. Plaintiff can satisfy the third prong of the *Hooks* test, that there was an overt act in furtherance of a conspiracy that injured him. The filing of the disorderly conduct complaint by Officer Popp and Chief Anderson constitutes an overt act. Furthermore, the injury to Plaintiff's reputation as well as the expense required to defend himself

at the criminal trial satisfies his burden of proving that he sustained injury as a result of the alleged conspiracy. Plaintiff, however, has failed to show that Officer Popp and Chief Anderson shared a single plan and common objective. Although this Court has found that Chief Anderson retaliated against Plaintiff, there is no evidence that Officer Popp acted in concert with Chief Anderson in his retaliating against Plaintiff. Thus, Plaintiff's Motion for Summary Judgment on his conspiracy claim against Officer Popp and Chief Anderson is **DENIED**.

### D. Defendants' Motions to Strike

Defendants filed three motions to strike. In their first motion (Doc. 83), they move to strike one of Plaintiff's notices (Doc. 82). In response to this Court's questions at a prior oral argument, Plaintiff submitted the notice in question which delineates the boundaries of the authority of fire chiefs in Ohio. Defendants, pursuant to Fed. Rul. Civ. P. 12(f), move to strike this notice because they assert that it is an improper pleading.[8] Specifically, Defendants claim that it is improper because it is intended to supplement Plaintiff's first motion for summary judgment, which is closed to further filings and because Plaintiff failed to seek leave-of-court before filing it. Because this Court did not rely in any way on this notice in rendering this opinion and because it most closely relates to a summary judgment motion that the Court has already decided, the notice has no relevance in this Court's current opinion. Therefore, Defendant's first motion to strike is **MOOT**.

In the second Motion to Strike (Doc. 94), Officer Popp moves to strike this same notice

---

[8]Fed. Rul. Civ. P. 12(f) states: "Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court <u>may</u> order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added)

(Doc. 82).  For the reasons stated above, Officer Popp's Motion to Strike is rendered **MOOT**.

In the third Motion to Strike (Doc. 96), Chief Anderson moves to strike Plaintiff's Memorandum Contra Defendant Gary Anderson's Motion for Summary Judgment (Doc. 87). Chief Anderson asserts that pages one through ten of Plaintiff's Opposition should be stricken because it does not respond to any of the arguments made in Chief Anderson's Motion for Summary Judgment and, as a result, amounts to nothing more than a sur-reply without leave-of-court.  Chief Anderson is incorrect.  Plaintiff is not filing a sur-reply to his own motion for summary judgment.  Instead, he is filing an opposition to Chief Anderson's Motion.  The fact that this opposition is not responsive to Chief Anderson's arguments is immaterial, especially in light of the repetitive nature of the arguments in both Parties' motions, and does not somehow transform this Opposition into a sur-reply; Plaintiff fails to address Chief Anderson's arguments at his own peril.  Therefore, the Court **DENIES** Chief Anderson's Motion to Strike.

### E.  Plaintiff's and Yorkville's Cross-Motions for Summary Judgment on Plaintiff's *Monell* Claim

In a 42 U.S.C. § 1983 case, government entities cannot be held liable under a theory of *respondeat superior*.  *See Monell v. Dep't. of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978).  Municipal entities can be held liable under 42 U.S.C. § 1983 only where the alleged constitutional violation is caused by the entity's official policy.  *Id*. at 694.  Further, in order to demonstrate liability, a plaintiff must show that the official policy in question is the "moving force" behind the constitutional violation.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Monell*, 436 U.S. at 694).  Moreover, the plaintiff has the burden of proof in showing the existence of an "affirmative link between the policy and the particular constitutional

violation alleged." *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005) (citations omitted). In other words, the Plaintiff must show that the municipalities' policy proximately caused his injury. Unless an official policy-maker is involved in the underlying constitutional violation, the existence of an official policy or custom cannot be demonstrated by the occurrence of the alleged constitutional violation itself. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Plaintiff seeks to impose *Monell* liability on Yorkville under three different theories: 1) The action's of Chief Anderson constituted Yorkville's policy in the single instance surrounding Plaintiff's citation; 2) Yorkville lacked adequate hiring criteria, supervision, training, and discipline of its police officers; and 3) Yorkville had a custom of tolerating constitutional violations by its police force.

### 1.) Chief Anderson's Actions Represented Official Policy

Plaintiff alleges that Chief Anderson was an official policy maker for Yorkville. He further contends that either Chief Anderson's active participation in Plaintiff's prosecution or his ratification of Officer Popp's arrest of Plaintiff represents the policy of Yorkville, and as such, Yorkville is liable under Section 1983.

As the Supreme Court noted in the seminal case of *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), in addressing the issue of municipal liability, "if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken

repeatedly.  To deny compensation to the victim would therefore be contrary to the fundamental purpose of Section 1983."

Moreover, municipal liability attaches only where the decisionmaker has final authority with respect to the action ordered.  *Id.*  In certain circumstances, a *single* decision by a policymaker can constitute official policy.  *Id.* at 483; *see also Holloway v. Brush*, 200 F.3d 767, 773 (6th Cir. 2000) (en banc) ("Under appropriate circumstances, even a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated").  But in any case, acts will only be construed as official policy when they are those of a body or an official "responsible for establishing final government policy respecting such activity."  *Id.* (citations omitted).  In this context, municipal liability attaches "where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.*  Thus, for liability to attach to Yorkville under this theory, Plaintiff must establish that Chief Anderson was a policymaker, that his actions regarding the citation of Plaintiff for disorderly conduct constitutes a policy, and that this policy proximately caused Plaintiff's injury.

The determination of whether an official has final decision making authority is a question of state law to determined by the trial judge.  *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).[9]  This Court concludes that Chief Anderson had final decision making authority for police actions within the Village of Yorkville.  He is the head police officer in the Village. Several village officials, including several members of the city council and the mayor, testified

_____

[9]The Court should look to positive state law and the relevant customs and practices in place. *See, e.g. Mandel v. Doe,* 888 F.2d 783, 793 (11th Cir. 1989).

-25-

that, among other things, Chief Anderson had the responsibility for creating the policies of the Yorkville Police Department.  The Court in *Pembaur* reached the same conclusion when it held that a county sheriff may establish law enforcement practices or policy.  *Id.* at 484.

Whether Chief Anderson's actions amount to municipal policy in this case presents a closer question.  This Court has already held that the arrest of Plaintiff violated his Fourth and First Amendment rights.  Chief Anderson alleges that he left the decision to charge Plaintiff in the hands of Officer Popp who was not a final decisionmaker.  Plaintiff contends that Chief Anderson took practically full responsibility for charging Plaintiff — asking Officer Popp about the incident, having him sign the blank forms, attending the trial, etc.

As established above, even a single act can constitute official policy.  In *Pembaur*, the Supreme Court held that the county prosecutor's decision to authorize deputy sheriffs to execute capiases allegedly in violation of the plaintiff's Fourth Amendment rights could subject the city to municipal liability.[10]  *Id.*  The situation in this case is factually analogous to *Pembaur*.  Here, whether Chief Anderson made the arrest himself, or whether he invested in Officer Popp the authority to do so is irrelevant.  Chief Anderson was informed of the events between Officer Popp and Plaintiff.  After hearing the facts, he believed that charges against Plaintiff were warranted.  He either instructed Officer Popp to file the charges or told Officer Popp he was

---

[10]"Applying this standard to the case before us, we have little difficulty concluding that the Court of Appeals erred in dismissing petitioner's claim against the county. The Deputy Sheriffs who attempted to serve the capiases at petitioner's clinic found themselves in a difficult situation. Unsure of the proper course of action to follow, they sought instructions from their supervisors. The instructions they received were to follow the orders of the County Prosecutor. The Prosecutor made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic. That decision directly caused the violation of petitioner's Fourth Amendment rights."

allowed to file the charges. By making or ratifying this charging decision, which this Court has previously held violated Plaintiff's constitutional rights, Chief Anderson set city policy. As such, Yorkville is liable for Plaintiff's injury. Therefore, Plaintiff's Motion for Summary Judgment on its *Monell* claim is **GRANTED** for this reason, and Yorkville's Motion for Summary Judgment is **DENIED**.

### 2.) Yorkville Police Department's Bad Hiring, Supervision, Training, And Disciplinary Practices

Plaintiff seeks to establish Yorkville's municipal liability by asserting a claim that the City had bad hiring policies, little or no supervision and training of police officers, and no disciplinary procedures for officers who broke the law. In order to sustain a claim against Yorkville on a theory of "failure to train or supervise," Plaintiff must establish that: (1) the training program at issue is inadequate to the tasks that officers must perform; and (2) the inadequacy is the result of the City's deliberate indifference; and (3) the inadequacy actually caused the Plaintiff's alleged injury. *See Sheperd v. City of Columbus*, 2006 WL 840386, *8-9 (S.D. Ohio Mar. 30, 2006) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390-97 (1989)); *see also, Bd. of County Commissioners of Bryan County. v. Brown,* 520 U.S. 397, 407 (1997) (finding that to make out a claim for failure to supervise, plaintiff must identify a deficiency in the training program and show that the specific deficiency actually *caused* a constitutional violation). In order to prove "deliberate indifference," Plaintiff must show that the need for better training was so obvious that the inadequacy was likely to result in a constitutional violation. *Barber v. City of Salem,* 953 F.2d 232 (6th Cir. 1992). Plaintiff proffers strong evidence to support his assertion that the Yorkville Police Department lacked adequate training,

supervision, and discipline under the direction of Chief Anderson.

Yorkville hired police officers with criminal histories without first performing background checks. For example, Officer Popp was convicted of disorderly conduct and making a false statement to a police officer.[11] Moreover, Chief Anderson, and other Yorkville officials, admit that there was no training program for the city's police officers. Yorkville City Council members testified that they left the majority of hiring and internal disciplinary decisions to Chief Anderson. Additionally, there was a pattern of bad supervision and disciplinary procedures in the Yorkville Police Department. For example, even after two incidents involving allegedly undue force and unlawful arrest, both of which resulted in civil lawsuits against Yorkville, Chief Anderson did not impose any discipline on the officers involved. In fact, Chief Anderson admits that he never imposed discipline on a police officer for making a false arrest or prosecution. Last, there was no system in the Yorkville Police Department for assessing or investigating civilian complaints.[12] Several city council members admit that they felt that certain officers were not properly trained, disciplined, or supervised during Chief Anderson's tenure. As a result, in combination with the fact that he was found to have made false statements to another police department, the Village Council fired Chief Anderson.

---

[11]*But see, Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997) (hiring an officer with a criminal history does not, in and of itself, establish municipal liability).

[12] But generally, a subsequent failure to conduct a meaningful investigation is not legally the "moving force" behind an alleged constitutional violation. *Daniels v. City of Columbus,* 2002 WL 484622, *5 (S.D. Ohio Feb. 20, 2002) (citing *Tompkins v. Frost,* 655 F. Supp. 468, 472 (E.D. Mich.1987)) ("wrongful conduct after an injury cannot be the proximate cause of the same injury")). "[I]n some cases, the municipality may be held liable when its failure to conduct an investigation or discipline the accused rises to the level of a policy of acquiescence that in itself was the 'moving force.'" *See Daniels,* 2002 WL 484622, at *5.

Yorkville retorts that it relied on the police academy to train its officers.  Moreover, it asserts that even if it lacked an adequate training program, it could not have had an impact in this case because Officer Popp was a new officer, and as such, would not have made it through the training program before the incident between him and Plaintiff occurred.  Furthermore, Yorkville asserts that Officer Popp's criminal convictions are irrelevant because they arise out of a custody dispute.  Finally, Yorkville contends that Plaintiff is being hypocritical because as a member of the Yorkville City Council's fire and police committees, he supported the hiring of Officer Popp and ratified other decisions of the police department.

Yorkville's counter-arguments are not well taken.  Based on the testimony of several city officials, it is clear that Yorkville lacked even the most basic training or supervision of its police officers.  This dearth of training amounts to a deliberate indifference on the part of Yorkville. *See, e.g., Shamaeizadeh v. Cunigan*, 338 F.3d 535, 557 (6th Cir. 2003) ("The need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers can reasonably be said to have been deliberately indifferent to the need").  The fact that Plaintiff sat on a police supervisory board that tacitly approved these policies is irrelevant.

Plaintiff has satisfied the first two prongs of the *Canton* test – an inadequate training and supervisory program that amounted to deliberate indifference on the part of Yorkville.  Plaintiff, however, fails to satisfy the third prong of *Canton* – that Yorkville's inadequate training and supervision proximately caused his injury in this case.[13]  He fails to show how, if Officer Popp received additional training, he would have made the decision not to cite Plaintiff for disorderly

---

[13]This is usually a question for a jury.  *See, e.g., Brown supra* note 12.

conduct.  Given the significant length of time Officer Popp had to research and decide on the charges against Plaintiff, and the fact that he had the opportunity to collaborate with Chief Anderson, it can be assumed that he put a great deal of thought into the charges.  Moreover, the record establishes that, at minimum, Chief Anderson approved the charges.  Thus, the Court fails to see, from the record evidence, how additional training would have prevented Officer Popp from filing these charges; it was not a heat of the moment decision in which additional training would have had an immediate effect.  For that reason, Plaintiff's Motion for Summary Judgment based on his second theory of municipal liability **FAILS**.  However, because the causal connection between Yorkville's lack of training and supervision of its officers and Plaintiff's injury presents a genuine issue of material fact, Yorkville's Motion for Summary Judgment **FAILS**.

### 3.) Yorkville's Custom of Tolerating Constitutional Violations

Yorkville could be held liable for tolerating or acquiescing to its police force's retaliatory behavior. *See, e.g., Britton v. Maloney*, 901 F.Supp. 444, 450 (D. Mass. 1995).  Some courts have held that a plaintiff may prove the existence of a custom with "evidence of repeated constitutional violations."  *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992).  Other courts have chosen to take a narrower approach, holding that "a custom requires that policymakers knew about the widespread practice but failed to stop it" or that "actual or constructive knowledge of such a custom was attributable to a governing body."  *Floyd v. Waiters*, 133 F.3d 786, 795 (11th Cir. 1998); *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)

Plaintiff asserts that Yorkville has a custom of tolerating police retaliation against citizens who criticize their actions.  In support of this contention, Plaintiff cites several examples

of this type of conduct.  In an incident involving Mssrs. Wick and Renforth, a passerby allegedly happened upon an officer using excessive force against a suspect.  When the passerby tried to intervene, the officer allegedly threatened to arrest him if they did not leave.  Mssrs. Wick and Renforth were arrested and later filed a civil suit against the city.  It was settled out of court.  Also, Kevin Kuri, Plaintiff's grandson, was allegedly arrested for making critical comments about the police.  He later sued Yorkville and received an out-of-court settlement.

Plaintiff's assertions, however, do not meet the standard required to establish that Yorkville had a policy of condoning retaliatory acts toward those who speak out against the police.  The two incidents that the Plaintiff cite cannot provide factual support for Plaintiff's contentions in this case because they settled out of court.  Moreover, Plaintiff offers no testimony from the participants of these incidents that illustrates that these incidents were in any way similar to the altercation between Plaintiff and Officer Popp.  Without factual support, such baseless allegations that history has repeated itself cannot withstand a motion for summary judgment.  *See, e.g.*, *Sarus v. Rotundo,* 831 F.2d 397, 402 (2d Cir. 1987) (finding a number of resisting arrest charges filed by police did not suggest policy of indifference to excessive use of force where plaintiff failed "to adduce evidence of the circumstances surrounding those arrests, or even to present corresponding figures from other police departments"); *Singleton v. City of Newburgh,* 1 F. Supp. 2d 306, 311 (S.D.N.Y. 1998) (granting summary judgment to defendant municipality on *Monell* claim because three complaints of alleged excessive use of force do not demonstrate deliberate indifference to use of excessive force).  Thus, as to Plaintiff's third reason for asserting municipal liability against Yorkville, Plaintiff's Motion **FAILS** and Yorkville's **SUCCEEDS only as to Plaintiff's third argument**.

### 4.) Yorkville's Contention that Plaintiff's Participation in Setting Police Policy Estops Him From Bringing a *Monell* Claim

As noted above, Yorkville contends that Plaintiff, as a member of the City Council and as a member of the Yorkville Police Department's Advisory Committee, Plaintiff participates in setting Yorkville's police policy.  Without citing any precedent, Yorkville argues that Plaintiff's failure to protest the detrimental police policies, which he participated in setting and now alleges are inadequate, should prevent him from bringing a *Monell* claim.  In essence, Yorkville asks this Court to graft an estoppel requirement onto *Monell*.

Yorkville's argument fails.  Yorkville has not adequately shown that Plaintiff actually participated in setting police policies.  On the other hand, the record evidence shows that Plaintiff was an outspoken critic of Chief Anderson and his administration.  Plaintiff did not have absolute power over decisions on how to train Yorkville's police force.  All evidence shows that these decisions were left to Chief Anderson.  Grafting an estoppel requirement onto *Monell* would force every city council person to take proactive steps to see that their city's police force is adequately trained and supervised before bring a *Monell* claim.  This is not the precedent that this Court wishes to set.  Plaintiff is but one member of a committee that was in charge of overseeing police procedure.  Forcing him to take the mast and steer the police department before he could bring suit against the police for harms caused him would be an anathema to American jurisprudence.  Furthermore, because this Court granted Plaintiff's *Monell* claim only because Chief Anderson acted as an official policymaker and not because of Yorkville's inadequate police policies, Yorkville's argument is moot.

In conclusion, because Plaintiff's established that Chief Anderson set police policy, and

that policy caused injury to Plaintiff, Plaintiff's Motion for Summary Judgment against Yorkville is **GRANTED** and Yorkville's Motion for Summary Judgment is **DENIED**.

## V.  CONCLUSION

For the foregoing reasons, the Court**:**

1) **DENIES** Officer Popp's Summary Judgment Motion based on Qualified Immunity (Doc. 68);

2) **DENIES** Plaintiff's Motion for Summary Judgment based on Retaliation against Officer Popp (Doc. 71);

3) **GRANTS** Plaintiff's Motion for Summary Judgment based on Retaliation Against Chief Anderson (Doc. 71);

4) **DENIES** Chief Anderson's Motion for Summary Judgment on Plaintiff's Retaliation Claim (Doc. 76);

5) **DENIES** Plaintiff's Motion for Summary Judgment on his Conspiracy Claim against Officer Popp (Doc 71);

6) **DENIES** Plaintiff's Motion for Summary Judgment on his Conspiracy Claim against Chief Anderson (Doc. 71);

7) **DENIES** Officer Popp's Motion for Summary Judgment on Plaintiff's Conspiracy Claim (Doc. 73);

8) **DENIES** Chief Anderson's Motion for Summary Judgment on Plaintiff's Conspiracy Claim (Doc. 76);

9.) **MOOTS** Defendants' Motion to Strike Plaintiff's Notice (Doc. 83);

10.) **MOOTS** Officer Popp's Motion to Strike Plaintiff's Notice (Doc. 94);

11.) **DENIES** Chief Anderson's Motion to Strike Plaintiff's Opposition to Chief Anderson's Motion for Summary Judgment (Doc. 96);

12.) **GRANTS** Plaintiff's Summary Judgment Motion on his *Monell* claim against Yorkville (Doc. 72);

13.) **DENIES** Yorkville's Motion for Summary Judgment on Plaintiff's *Monell* claim (Doc. 77); and

14.) **DENIES** Officer Popp's Motion for Summary Judgment on Plaintiff's Retaliation Claim (Attachment to Doc. 111)

      **IT IS SO ORDERED.**


          **s/Algenon L. Marbley**
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**


**DATED: March 13, 2007**